UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| ROBERT LEE TAYLOR, SR., individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIVERSAL AUTO GROUP I, INC., a Washington corporation, d/b/a/ TACOMA DODGE CHRYSLER JEEP,<br><br>Defendants. | CASE NO. C 13-5245 KLS<br><br>ORDER ON MOTION FOR SUMMARY JUDGMENT |

Mr. Taylor alleges that the recorded phone calls made on behalf of the Defendant to Mr. Taylor violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* (TCPA), the Washington Automatic Dialing and Announcing Device statute, R.C.W. 80.36.400 (WADAD) and the Washington Consumer Protection Act, R.C.W. 19.86 *et seq.* (WCPA).

This matter now comes before the Court on the Defendant's Motion for Summary Judgment. Having reviewed the pleadings filed by the parties, the Court concludes that the motion should be Granted in part and Denied in part.

# FACTS

Tacoma Dodge Chrysler Jeep (Tacoma Dodge) opened for business in December 2009, after Chrysler had closed its prior dealerships in the area and entered bankruptcy. Tacoma Dodge operates in the same location as the prior dealership. Mr. Taylor purchased two vehicles and had them serviced at the prior dealership.

After Tacoma Dodge opened for business it sent a pre-recorded "welcome" phone message recorded by the new owner to customers of the prior dealership – including Mr. Taylor. There is no evidence before the Court as to how this call was initiated or what specifically was said. It also appears from Mr. Taylor's declaration that he has no memory of receiving such a call. Dkt. 34, p. 2, line 24 – 25.

Mr. Taylor first conducted business with Tacoma Dodge in February 2010 and last conducted business with them on July 9, 2011.

Around May 2011 Tacoma Dodge began participating in a call program "that Chrysler promoted as fostering positive customer relations." The program involved thanking customers for their business and reminding service customers when a vehicle was due, or past due, for maintenance. Tacoma Dodge used a Chrysler "preferred vendor" called "OneCommand" to make the recorded calls. According to the Defendant, the calls were only made to existing customers of the Tacoma Dodge "who had provided Tacoma Dodge with telephone numbers at which they wished to be contacted." Dkt. 29, p. 2-3.

It is undisputed that Mr. Taylor received five recorded calls made by OneCommand on behalf of Tacoma Dodge. Dkt. 29, p. 3. The calls, made on July 11, October 7 and October 11, 2011 and April 4 and July 3, 2012, were all to the same number which Mr. Taylor identifies as his cell phone. Tacoma Dodge records show a second phone number but no calls were made to

1  that number.  All of these calls were made after Mr. Taylor last took his vehicles to Tacoma

2  Dodge for servicing, which was July 9, 2011.

3  The last recorded call was on July 3, 2012.  On that date Mr. Taylor sent an email to

4  Tacoma Dodge advising that Tacoma Dodge had violated the law.  In response to this email

5  Tacoma Dodge immediately removed Mr. Taylor's name from the service reminder call

6  program.  Tacoma Dodge changed its customer relations program from telephone to email in

7  October 2013.

8  Mr. Frost, Service Director for the Defendant, asserts that Mr. Taylor "provided" Tacoma

9  Dodge with his phone numbers.  He states that it is the "usual and customary business practice"

10 for Tacoma Dodge to "ask each customer how he or she wishes to be contacted.  This contact

11 information is noted on the service order and approved by the customer signing it."  He asserts

12 that the numbers appearing on the service order were "provided" by Mr. and Mrs. Taylor and

13 that they authorized Tacoma Dodge to contact them at either number. Dkt. 29, p. 2.  The Court

14 notes that there are no declarations from the individuals who actually interacted with Mr. Taylor

15 stating what they actually did or said.

16 On the other hand, Mr. Taylor clearly states (based on his personal knowledge) that he

17 never "provided" his phone number to Tacoma Dodge.  Mr. Taylor admits, however, that he had

18 provided his phone numbers to the prior dealership.  According to Mr. Taylor, "[t]he only thing

19 asked of me by Defendant Tacoma Dodge about my telephone number when I brought vehicles

20 in for service was whether that was a good number to reach me to let me know my vehicle was

21 ready to pick up." Dkt. 34, p. 3.  Clearly the phone number Mr. Taylor advised Tacoma Dodge

22 to use was his cell phone number, which is also the number used by OneCommand.

23

24

## SUMMARY JUDGMENT – LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). The Court must draw all reasonable inferences in favor of the non-moving party. *See F.D.I.C. v. O'Melveny & Meyers,* 969 F.2d 744, 747 (9th Cir. 1992), *rev'd on other grounds,* 512 U.S. 79 (1994). The moving party has the burden of demonstrating the absence of a genuine issue of material fact for trial. *Anderson, supra, at p.* 257. Mere disagreement, or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir. 1987).

Genuine factual issues are those for which the evidence is such that "a reasonable jury could return a verdict for the non-moving party." *Anderson, supra, at* 248. Material facts are those which might affect the outcome of the suit under governing law. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.,* 41 F.3d 547, 549 (9th Cir. 1994)(citing *O'Melveny & Meyers, supra, at* 747). Furthermore, conclusory or speculative testimony is insufficient to raise a genuine issue of fact to defeat summary judgment. *Anheuser-Busch, Inc. v. Natural Beverage Distributors,* 60 F.3d 337, 345 (9th Cir. 1995). Similarly, hearsay evidence may not be considered in deciding whether material facts are at issue in summary judgment motions. *Id. at* 345; Blair Foods, Inc. v. Ranchers Cotton Oil, *610 F.2d 665, 667 (9th Cir. 1980).*

**TELEPHONE CONSUMER PROTECTION ACT**

Mr. Taylor alleges violation of 47 U.S.C. § 227(b)(1)(A)(iii).  This statute provides as follows:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States –
> (A)  to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice –
> …
> …
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call;

The TPCA was enacted in 1991 in order to " 'protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls … by restricting certain uses of facsimile machines and automatic dialers.' " *Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir. 2009)(quoting legislative history).

**DISCUSSION – TPCA**

There are three elements to a TCPA claim:  (1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent.  *Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3e 1036, 1043 (9th Cir. 2012).  The Defendant relies on two arguments in support of its motion to dismiss the Plaintiff's TPCA claim.  The first argument is that the Defendant was not charged for the calls, which the Defendant asserts is a requirement under the statute.  The second argument is based on the affirmative defense of consent.

**I. CHARGE REQUIREMENT**

The Defendant asserts that Plaintiff's claim alleging violation of the TPCA fails because he did not allege that the calls made on behalf of Tacoma Dodge resulted in him being charged

for the calls. The Plaintiff responds that the phrase "for which the called party is charged for the call" only modifies the preceding language - "any service" – and not the preceding list. The Court agrees with that assertion.

This Court agrees with the analysis of the Eleventh Circuit Court of Appeals in *Osorio v. State Farm Bank,* 746 F.3d 1242 (11th Cir. 2014) regarding the charge requirement.

> In the end, we go back to the basic question of whether the TCPA itself exempts all auto-dialed calls for which there is no charge. The applicable canons of construction indicate that it does not. To repeat the key language, the Act prohibits autodialed calls "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(A)(1)(iii)[1]. The rule of the last antecedent requires the phrase "for which the called party is charged for the call," *id.,* "to be applied to the words or phrase immediately preceding [i.e., "any service"], and … not to be construed as extending to or including others more remote," *see Bingham, Ltd. v. United States*, 724 F.2d 921, 925 n.3 (11th Cir. 1984) (internal quotation marks Omitted); namely, "paging," "cellular telephone," or "mobile radio" services, 47 U.S.C. § 227 (b)(A)(1)(iii). We therefore presume that Congress did not intend the phrase "for which the called party is charged for the call" to apply to cellular telephone services.

*Osorio, Id.* at p. 1257.

The Court in *Osorio* also noted that an interpretation of 47 U.S.C. § 227(b)(1)(A)(iii) that exempts all autodialed calls to cellular phones for which the called party is not charged per call would clash with § 227(b)(2)(C) of the same statute. 47 U.S.C. § 227(b)(2)(C) states the Commission "may, by rule or order, exempt from the requirements of paragraph (1)(A)(iii) of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect." As noted by the Eleventh Circuit, "[t]he provision allowing for the promulgation of exemptions would be

---

[1] The Court notes the incorrect cite. The appropriate citation is to 47 U.S.C. § 227 (b)(1)(A)(iii).

meaningless if, as State Farm proposes, § 227(b)(1)(A)(iii) already exempts all calls for which the party is not charged per call." *Osorio, Id.* at p. 1258.

The Defendant's motion is to dismiss based on the Plaintiff incurring no charge for the calls is **DENIED**.

## II. AFFIRMATIVE DEFENSE OF CONSENT

Defendant also asserts, as an affirmative defense, that Mr. Taylor consented to receiving the calls by providing his phone number to Tacoma Dodge. Mr. Taylor denies that he "provided" his phone number to Tacoma Dodge but rather that he only affirmed that his cell phone number "was a good number to reach me to let me know my vehicle was ready to pick up." Dkt. 34, p. 3, Declaration of Robert L. Taylor.

"Prior express consent is an affirmative defense, meaning that the defendant bears the burden of proving it." *Olney v. Job.Com, Inc.,* 2014 WL 1747674 (E.D. CA 2014) citing to *Pinkard v. Wal-Mart Stores, Inc.,* 2012 WL 5511039, at *3 (N.D. Ala. Nov.9, 2012). To obtain summary judgment, therefore, the Defendant "must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transportation Brokerage Co. v. Darden Restaurants,* 213 F.3d 474, 480 (9th Cir. 2000).

While the parties disagree regarding the words that should be used to describe how the Defendant obtained Mr. Taylor's cell phone number, it is clear that he confirmed his cell phone number shown on the various service orders and he authorized the Defendant to utilize that phone number. It is also undisputed that the calls made to Mr. Taylor's cell phone number were all business related.

The undersigned agrees with the Central District of California's analysis of the consent defense set forth in great detail in *Baird v. Sabre Inc.,* 2014 WL 320305 (C.D. Cal). As noted, "[i]n a 1992 rulemaking action implementing the TCPA, the FCC ruled that 'persons who

knowingly release their phone numbers have *in effect* given their invitation or permission to be called at the number which they have given, absent instructions to the contrary.' *In re Rules & Reg's Implementing the Tel. Consumer Prot. Act of 1991*, 7 F.C.C.R. 8752, 8769 ¶ 31 (1992)." *Baird, Id.* at 82.

The Court in *Baird* defined the question in that case as follows: "whether the earlier 1992 Order defined 'prior express consent' so that the mere act of providing a cellphone number to a business in connection with a transaction constitutes the consent required under the TCPA to receive autodialed calls." The Court answered that question in the affirmative. Under the FCC's definition set forth above, it is undisputed that Mr. Taylor "knowingly released" his phone number to the Defendant, and by doing so gave permission to be called at that number by an automated dialing machine. *See, also, Van Patten v. Vertical Fitness Group, LLC*, 2014 WL 2116602 (S.D.Cal.).

The Defendant's motion to dismiss the Plaintiff's TPCA claim based on the affirmative defense of consent is **GRANTED as it pertains to all the calls made by the Defendant in 2011 and 2012.** Neither of the parties adequately addressed the pre-recorded phone message sent by the Defendant in December 2009. In fact, the Court is not certain that the Plaintiff's claim is based on that call since he was not aware it was made prior to the Defendant's filing their motion for summary judgment.

**WASHINGTON AUTOMATIC DIALING AND ANSWERING DEVICES ACT
R.C.W. 80.36.400**

Under the WADAD, "[n]o person may use an automatic dialing and announcing device for purposes of commercial solicitation." R.C.W. 80.36.400(2). Any violation of the WADAD is a *per se* violation of Washington's Consumer Protection Act. R.C.W. 80.36.400(3). "Commercial solicitation" is defined as "the unsolicited initiation of a telephone conversation for

1  the purpose of encouraging a person to purchase property, goods, or services." R.C.W.
2  80.36.400(1)(b).

### DISCUSSION

4  Mr. Taylor also asserts that the Defendant violated the Washington Automatic Dialing
5  and Answering Devices Act (WADAD) when it made the calls in 2011 and 2012. As noted
6  above, with regard to the TCPA, it is unclear if Mr. Taylor is alleging a violation of the WADAD
7  based on the December 2009 call the Defendant admits making to the Plaintiff.

8  With regard to R.C.W. 80.36.400(2), the Defendant asserts (1) that the calls made in 2011
9  and 2012 are excluded by virtue of the language in R.C.W. 80.36.390(1); (2) that the calls were
10 not "unsolicited" and (3) that the calls did initiate a telephone conversation.

11 **I.  WADAD (R.C.W 80.36.400) and TELEPHONE SOLICITATION (R.C.W. 80.36.390)**

12 The Defendant suggests that R.C.W. 80.36.390(1) "Telephone solicitation" is a related
13 statute and that the Court should incorporate definitions from that statute into R.C.W. 80.36.400.
14 More specifically, the Defendant suggests that the exclusion from the definition of "telephone
15 solicitation" of "calls regarding an item that has been purchased by the called party from the
16 company or organization during a period not longer than twelve months prior to the telephone
17 contact" should apply. If it does, then the calls made by the Defendant were with regard to prior
18 work done on Mr. Taylor's vehicles and the need to do more work according to a maintenance
19 schedule. If this exception applies to R.C.W. 80.36.400, then the Defendant did not violate the
20 WADAD. The undersigned does not, however, agree with that suggestion.

21 It appears that the WADAD statute very specifically targets only calls made by an
22 automatic dialing and announcing device "which automatically dials telephone numbers and
23 plays a recorded message once a connection is made." R.C.W. 80.36.400 and WAC 480-120-
24 253. In addition, the Legislative finding does not support Defendant's suggestion. "The

legislature finds that the use of automatic dialing and announcing devices for purposes of commercial solicitation: (1) Deprives consumers of the opportunity to immediately question a seller about the veracity of their claims; (2) subjects consumers to unwarranted invasions of their privacy; and (3) encourages inefficient and potentially harmful use of the telephone network. The legislature further finds that it is in the public interest to prohibit the use of automatic dialing and announcing devices for purposes of commercial solicitation." Wash.Rev.Code § 80.36.400 [1986 c 281 § 1].  This legislative history does not support incorporation of language from R.C.W. 80.36.390(1)

## II.  UNSOLICITED vs. CONSENT

The Defendant's argument regarding the calls being "unsolicited" in context of the WADAD not clear.  However, the undersigned concludes that the calls, for purposes of the state statute, were unsolicited.

Unfortunately, the WADAD does not define the term "unsolicited," and the Washington courts have not yet interpreted its meaning within the context of the statute.  As noted by Judge Lasnik, "The common, ordinary meaning of the word 'unsolicited' is 'not asked for' or 'not requested.' " *Hovila v. Tween Brands,* 2010 WL 1433417 (W.D.Wash.).  While express consent by the recipient may constitute a request, the evidence before this Court is that Mr. Taylor expressly agreed to receive a phone call when his vehicle was ready to be picked up.  He did not expressly agree to more.

The Defendant appears to suggest that a ruling by the FCC regarding unsolicited calls to cellular telephones should apply to the case at hand.  However, as noted by Judge Lasnik in the *Hovila* case, "[t]he federal and state statutes are not sufficiently similar for the Court to incorporate TCPA definitions into the WADAD." *Id.* at *12.  There is even less reason to incorporate rulings by the FCC into the state statute.  For purposes of this summary judgment

motion, the undersigned DENIES the Defendant's motion based on the argument that the calls were not unsolicited.

### III.  CALLS DID NOT INITIATE A TELEPHONE CONVERSATION

The third defense raised by the Defendant under the WADAD is that the calls did not initiate a telephone conversation.  This Court agrees with the analysis and conclusions of Judges Leighton[2], Robart[3] and Pechman[4].  The calls made in 2011 and 2012 on behalf of the Defendant invited the Plaintiff to return the call and schedule an appointment.  The undersigned concludes that the calls initiated a conversation within the meaning of WADAD.  The Defendant's motion to dismiss the Plaintiff's claims under WADAD and the Consumer Protection Act are DENIED.

### CLASS ACTION CLAIM

The undersigned declines to rule on the Defendant's motion to deny certification when the Plaintiff's motion to certify has not been filed with the Court.

### SUMMARY

With regard to the Defendant's summary judgment motion (Dkt. 28) to dismiss the Plaintiff's claims under the TCPA, the motion is **GRANTED** as to all calls made in 2011 and 2012.  The Defendant's motion to dismiss the Plaintiff's claims under the WADAD and Consumer Protection Act are **DENIED.**

DATED this 1st day of July, 2014.

Karen L. Strombom
United States Magistrate Judge

---

[2] *Anderson v. Domino's Pizza, Inc.,* 2012 WL 1684620 (W.D. Wash.)
[3] *Hartman v. United Bank Card Inc.,* 2012 WL 4758052 (W.D. Wash.)
[4] *Meilleur v. AT&T, Inc.,* 2011 WL 5592647 (W.D. Wash.)